UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARGARET BERRETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:19-cv-00801 (TSE/IDD) |
| ) | |
| ANDREW M. SAUL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 10, 16). Pursuant to 42 U.S.C. § 405(g), Margaret Berrett ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-434 from July 31, 2006 through March 23, 2015. For the reasons stated below, the Court finds that Defendant's decision is supported by substantial evidence, and that there is no evidence warranting remand. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment be **GRANTED** [Dkt. No. 16] and that Plaintiff's Motion for Summary Judgment [Dkt. No. 10] be **DENIED**.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB and Supplemental Security Income Benefits ("SSI") on March 24, 2015, alleging disability since July 31, 2006.[1] (Administrative Record ("R.") at 271-81.) Plaintiff claimed to suffer from the following impairments: anxiety, depression, degenerative disc disease, epilepsy, memory loss, and muscle pain, and allergies. *Id.* at 158, 169. Plaintiff's initial claims were denied on September 28, 2015, and again upon reconsideration on November 20, 2015. *Id.* at 125-37, 139-51, 158-79. Plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ") on December 15, 2015. *Id.* at 196. A hearing before ALJ Thomas Mercer Ray was conducted on January 22, 2018. *Id.* at 40.

On May 11, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act prior to March 24, 2015 but became disabled on that date and has been disabled through the date of the decision. *Id.* at 16-31. On April 15, 2019, the Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner for purposes of review under 42 U.S.C. § 405(g). *Id.* at 1-6. Having exhausted her administrative remedies, Plaintiff filed the instant suit challenging the ALJ's decision on June 17, 2019. Compl., Dkt. No. 1. Cross-motions for summary judgment were filed and this matter is ripe for disposition.

## II.     STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, this Court is limited to

---

[1] Although Plaintiff's March 24, 2015 Application Summary for DIB states that the date of her disabling condition is January 1, 2005, her Application Summary for SSI states that her disability began on July 31, 2006. The ALJ's decision and the Memorandum in Support of Plaintiff's Motion for Summary Judgment state that Plaintiff's disability commenced on July 31, 2006 as well. *See* R. at 16, 271, 273; Mem. in Supp. of Pl.'s Mot. for Summ. J. at 1.

2

determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is more than a mere scintilla but less than a preponderance of the evidence. *Craig*, 76 F.3d at 589. An ALJ is required to analyze all relevant evidence and sufficiently explain his or her findings. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). In reviewing the record for substantial evidence, the court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). If the ALJ's determination is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the district court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The Commissioner's factual findings, if supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390.

The Fourth Circuit applies a harmless error analysis in the context of social security disability determinations. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir.2015); *Hammond v. Colvin*, No. 1:12-CV-01177, 2013 WL 5972432, at *6 (E.D. Va. Nov. 8, 2013). The harmless error doctrine prevents a remand when the ALJ's decision is "overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" and a remand would be "a waste of time." *Williams v. Berryhill*, No. 1:17-CV-167, 2018 WL 851259, at *8 (E.D. Va. Jan. 18, 2018) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 Fed. Appx. 65,

3

67 (4th Cir. 2014) (per curiam)). An ALJ's error may be deemed harmless when a court can conclude on the basis of the ALJ's entire opinion that the error did not substantively prejudice the claimant. *See Lee v. Colvin*, No. 2:16-CV-61, 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016). When reviewing a decision for harmless error, a court must look at "[a]n estimation of the likelihood that the result would have been different." *See Morton-Thompson v. Colvin*, No. 3:14-CV-179, 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411–12 (2009)).

### III. DETERMINING DISABILITY AND THE ALJ'S DECISION

#### A. Determining Disability and the Sequential Analysis

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the claimant must have a severe impairment or impairments that make it impossible to do past relevant work or any other substantial gainful activity that exists in the national economy. *Id.*; *see Heckler v. Campbell*, 461 U.S. 458, 460 (1983). The ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine the claimant's eligibility. Specifically, the ALJ must consider whether the claimant: (1) is engaged in substantial gainful activity;[2] (2) has a severe impairment; (3) has an impairment that equals a condition contained within the Social Security Administration's official Listing of Impairments;

---

[2] Substantial gainful activity ("SGA") is work that is both substantial and gainful as defined by the Agency in the Code of Federal Regulations. Substantial work activity "involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks, hobbies, therapy, school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

4

(4) has an impairment that prevents past relevant work;[3] and (5) has an impairment that prevents her from any substantial gainful employment. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). After step three of the analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 416.920(e)–(f), 416.945(a)(1). *Morris v. Berryhill*, No. 3:16-CV-587, 2017 WL 4112365, at *6 (E.D. Va. Aug. 30, 2017), *report and recommendation adopted*, 2017 WL 4108939 (E.D. Va. Sept. 15, 2017).

### B. The ALJ's Decision

At step one of the sequential evaluation the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 31, 2006.[4] R. at 19, 308. At step two of the sequential evaluation, the ALJ found that Plaintiff had various severe and non-severe medically determinable impairments. *Id.* at 19-20. As of July 31, 2006, the ALJ found the following impairments severe: anxiety, depression, epilepsy, and a memory/attention disorder. Id. at 19. As of March 24, 2015, the ALJ found the following impairments severe: anxiety, depression, epilepsy, a memory attention/disorder, and degenerative disc disease. *Id.* The ALJ found Plaintiff's vision, headaches, sinusitis, bronchitis, acute upper respiratory infection, a urinary tract, and an open wound of her jaw all non-severe. *Id.* at 20.

At step three of the sequential evaluation, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 20. In between steps three and four of the sequential evaluation, the ALJ found that Plaintiff, prior to March 24, 2015,

---

[3] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 404.1560(b), 404.1565(a).
[4] The ALJ wrote that "claimant testified that she stopped working on July 31, 2016" but the record reflects that the correct date is July 31, 2006. R. at 19, 308.

5

had the RFC to perform a full range of work at all exertional levels but had the following limitations: occasional exposure to fumes, odors, dust, gases, poor ventilation, mechanical parts and unprotected heights. *Id.* at 23. Plaintiff could also occasionally operate a vehicle but was limited to performing simple 1 to 4 step routine, repetitive tasks in a low stress environment. *Id.* The ALJ defined this limitation as requiring only occasional decision making and occasional changes in the work setting, with occasional contact with co-workers and supervisors, no contact with the general public, and no fast-pace or production quotas. *Id.* As of March 24, 2015, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. *Id.* at 26. Plaintiff could also sit, stand, or walk for 6 hours in an 8 hour workday, as well as push or pull the weight she could lift and carry. *Id.* Plaintiff also had the same limitations as to odors, mechanical parts, and unprotected heights as stated in the RFC prior to March 24, 2015. *Id.* Plaintiff could occasionally operate a vehicle and had the same limitations as to tasks and work environment as stated in the RFC prior to March 24, 2015. *Id.*

At step four of the sequential evaluation, the ALJ found that Plaintiff was unable to perform any past relevant work. *Id.* at 28. At step five of the sequential evaluation, the ALJ found that prior to March 24, 2015, there were jobs that existed in significant numbers that Plaintiff could have performed. *Id.* at 29. The ALJ also found that beginning on March 24, 2015, there were no jobs that existed in significant numbers that Plaintiff could perform. *Id.* at 30. Based on the above, the ALJ concluded that Plaintiff was was not disabled prior to March 24, 2015, but became disabled on that date and through the date of the ALJ decision, and that Plaintiff was not under a disability as defined by the Social Security Act at any time through December 31, 2011. *Id.* at 30.

### IV. ANALYSIS

#### A. Cross-Motions for Summary Judgment

Plaintiff argues that the ALJ erroneously assessed Plaintiff's RFC in the following ways: (1) the ALJ failed to explain how he determined that Plaintiff was limited to performing simple 1 to 4 step routine, repetitive tasks in a low stress work environment, defined as requiring occasional decision making and occasional changes in the work setting, with occasional contact with coworkers and no contact with the general public, with no fast pace or production quotas; (2) the ALJ failed to explain his conclusion that upon Plaintiff's application for SSI (March 24, 2015), Plaintiff's functions changed and she was no longer able to perform a full range of work at all exertional levels but was limited to sitting, standing, and walking 6 hours in an 8-hour workday; (3) the ALJ failed to mention evidence from a September 15, 2006 neuropsychological test which showed Plaintiff's difficulty staying on task, and a June 16, 2005 MRI which stated that a disc was touching Plaintiff's left sided nerve root; (4) the ALJ failed to explain the evidence relied upon for determining Plaintiff's limitations as to concentration, persistence, or pace, and that the ALJ failed to explain the term "fast pace or production quotas"; (5) and the ALJ failed to explain how Plaintiff would be capable of maintaining concentration, attention, and pace throughout the entire workday without limitation. Pl.'s Br. at 4-15. In contrast, Defendant seeks summary judgment on the ground that the ALJ's decision is supported by substantial evidence and therefore should be affirmed. Def.'s Br. at 2. Defendant's brief in support of summary judgment focuses on disputing the arguments propounded by Plaintiff. Therefore, the Court will address each of Plaintiff's objections to the ALJ's decision in turn.

7

### 1. Plaintiff's RFC Limitations as to Routine, Tasks, Concentration, and Production Quotas

Since Plaintiff's first, fourth, and fifth objections to the ALJ's decision touch on similar portions of the RFC, the undersigned will address the three objections together. In sum, Plaintiff argues that the ALJ failed to explain how he determined Plaintiff's RFC limitations as to routine, tasks, production quotas, and concentration, attention, and pace. Pl.'s Br. at 4-13. Defendant argues that the ALJ identified Plaintiff's mental limitations in accordance with SSR 96-8p, explained the terminology used, and set forth a narrative discussion of evidence in support of his conclusions. Def.'s Br. at 16-21. For the reasons stated below, the undersigned recommends a finding that the ALJ sufficiently addressed and explained Plaintiff's limitations as to routine, tasks, production quotas, and concentration, attention, and pace.

### Applicable Law

The Fourth Circuit has declined to adopt a *per se* rule requiring courts to remand whenever an ALJ fails to conduct a function-by-function analysis. *See Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016); *Mascio,* 780 F.3d at 636. Instead, the Fourth Circuit holds the position that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (*per curiam*)). *See also Monroe*, 826 F.3d at 188. The Fourth Circuit has found harmful error where an ALJ's decision precludes meaningful review. *Mascio*, 780 F.3d at 636–37. The *Mascio* standard is satisfied if the ALJ (1) fashions an appropriately limited RFC or (2) performs a function-by-function analysis that explains, either explicitly or implicitly, why additional limitations are not necessary. *Oldham v. Berryhill*, No. 2:16-CV-659, 2018 WL 773442, at *8 (E.D. Va. Jan. 17, 2018).

8

An ALJ's RFC determination, as with all other steps in determining a plaintiff's disability status in social security matters, is subject to the "substantial evidence" standard of review, which is explained above. "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ must identify evidence that supports his or her conclusion and "build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (citing *Monroe*, 826 F.3d at 189).

"[T]he Fourth Circuit requires ALJs to explain the connection between the medical evidence considered and the accommodation, or lack thereof, for moderate limitations in concentration, persistence, and pace in the residual functional capacity." *McNiff v. Berryhill*, No. 1:18CV1411, 2019 WL 3161840, at *15 (E.D. Va. June 4, 2019), *report and recommendation adopted*, 2019 WL 3084235 (E.D. Va. July 15, 2019). An ALJ "does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,'" without an explanation. *Mascio*, 780 F.3d 632 at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011); *see also Jones v. Comm'r of Soc. Sec.*, No. SAG-15-2638, 2016 WL 4687678 at *3 (D. Md. Sept. 7, 2016) (holding that an ALJ's analysis was insufficient because the ALJ did not explain why the ALJ believed the claimant had moderate limitations instead of a mild limitations or no limitations, as to concentration, persistence, or pace).

The mental functioning area of concentration, persistence, or pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. § Pt. 404,


Subpt. P, App. 1, (hereinafter, "§ 12.00"). Some examples include initiating and performing an activity one understands how to do, engaging in an activity at home or in school at a consistent pace, completing tasks in a timely manner, and avoiding distractions while engaged in work activity. *Id*

## Analysis

The undersigned finds that the ALJ sufficiently explained how he determined Plaintiff's RFC limitations as to routine, tasks, production quotas, and concentration, attention, and pace. The undersigned notes that there is no rigid and particular format that the ALJ must use in order to assess a plaintiff's RFC, as long as the ALJ engaged in a reasoned discussion of plaintiff's functional limitations and work capacity. *Sogohian v. Colvin*, Civ. No. 1-12-cv-1232, 2014 WL 996530 at *6 (E.D. Va. Mar. 13, 2014) citing *Dyer v. Barnhart* 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining that there was "no rigid requirement" that the ALJ must "refer to every piece of evidence in his decision, so long as the ALJ's decision" sufficiently allows the reviewing court to conclude that the ALJ considered claimant's medical condition as a whole).

Here, the ALJ discussed that Plaintiff had a moderate limitation as to concentration, persistence, or maintaining pace because Plaintiff testified that she had lost her job due to problems with learning technology, maintaining a good memory, and multi-tasking. R. at 22, 57-59. The ALJ also discussed how Plaintiff relies on her sister to explain doctors' instructions to her as well as help with managing finances, and that Plaintiff is unable to use social media or complete other tasks online. *Id.* at 22. The ALJ noted that Plaintiff scored "below average" on the Cancellation of Rapidly Recurring Figures test and the WRAML Letter-Number Subtest and that her test scores on the Tests of Variables of Attention and the Wisconsin Card Sorting Test suggested an attention disorder. *Id.* Further, the ALJ discussed that a neuropsychological

evaluation from Jorge Rodriguez, Ph.D., showed that Plaintiff's attention was accurate but she was "somewhat distractible" and that Plaintiff "demonstrated mild word-finding difficulties." *Id.* After the ALJ determined Plaintiff's RFC, the ALJ discussed how Plaintiff had debilitating mental impairments after the alleged onset date including how she presented with anxiety upon examination, word-finding difficulties, and had below average scores on attention testing. *Id.* at 27.

Plaintiff cites *Yvette J. v. Saul*, 2019 WL 3720294, and *Eichelberger v. Colvin*, 2018 WL 2740018, in support of her argument that the ALJ failed to explain how he determined the mental limitations in Plaintiff's RFC and how he concluded that Plaintiff was only limited to the performance of simple 1 to 4 step tasks. Pl.'s Br. at 7-8. The undersigned finds that both cases are distinguishable for the following reasons. In *Yvette J.*, the court found that since several doctors determined that the plaintiff "had a limitation of performing simple one-to-two step instruction" and the ALJ assigned those doctor's opinions great weight, it was unclear how the ALJ then determined that the plaintiff could perform 1 to 4 step tasks. *Yvette J. v. Saul*, Civ. No. 8:18-cv-1282-GLS, 2019 WL 3720294 at *3 (D. Md. Aug. 5, 2019). Here, based on the record, it does not appear that the ALJ contradicted medical opinions that concluded that Plaintiff could perform a different number of step tasks than what is stated in the RFC. Nor does it appear that the ALJ came to a different conclusion than the opinion evidence which he gave great weigh to. Thus, *Yvette J.* is inapplicable to the facts here.

In *Eichelberger*, the court remanded the case because the ALJ did not discuss the type of tasks the claimant could perform, nor did the ALJ explain how he concluded that the claimant had moderate difficulties that resulted in a 1 to 4 step routine when, however, the ALJ repeatedly mentioned that the claimant had good ability to complete daily tasks, concentration, and

memory. *Eichelberger v. Colvin*, Civ. No. 8:16-cv-03299-GLS, 2018 WL 2740018 at *2 (D. Md. Apr. 12, 2018). The undersigned finds that such is not the case here. In section four of the ALJ's opinion in the instant case, the ALJ concluded that Plaintiff has a moderate limitation as to her memory. R. at 21. The ALJ discussed Plaintiff's testimony about losing her job at Nordstrom due to memory problems and her job at a medical office because of her issues with managing technology and multi-tasking. *Id.* The ALJ discussed Plaintiff's testimony that she is able to do laundry and prepare simple meals. *Id.* Additionally, in determining Plaintiff's memory limitations, the ALJ referenced evaluations from 2007, and 2009 through 2012 which showed intact verbal memory or normal memory. *Id.* As discussed earlier, the ALJ also analyzed the findings of Plaintiff's attention tests which showed mild word-finding difficulties, average nonverbal reasoning, and improved psychological symptoms. *Id.* at 22. Thus, *Eichelberger* is inapplicable because the ALJ here explained why he concluded that Plaintiff was limited to simple 1 to 4 step routine, repetitive tasks. Based on the ALJ's same analysis above and the fact that the ALJ noted that Plaintiff has anxiety (*see* R. at 24, 25, 27), the undersigned finds that the ALJ also explained how he concluded that Plaintiff should be limited to occasional contact with co-workers and should not have a role that would require a fast pace or production quotas. Lastly, the undersigned finds that the ALJ defined "fast pace or production quotas" when he stated, "such as would customarily be found working on an assembly line." *Id.* at 26.

In conclusion, the undersigned recommends a finding that the ALJ sufficiently explained how he determined Plaintiff's RFC limitations as to routine, tasks, production quotas, and concentration, attention, and pace.

### 2. Plaintiff's Application Date for SSI

Plaintiff argues that the ALJ failed to explain his conclusion that Plaintiff was no longer able to perform a full range of work at all exertional level but was limited to sitting, standing, and walking for a total of 6 hours in an 8-hour day, upon Plaintiff filing for SSI on March 24, 2015. Pl.'s Br. at 8-9. Defendant argues that the ALJ clearly explained how he determined Plaintiff's RFC as of March 24, 2015. Def.'s Br. at 21-22. For the reasons stated below, the undersigned finds that the ALJ did explain and identify evidence in support of determining Plaintiff's RFC as of March 24, 2015.

### Applicable Law

The standards for an ALJ conducting a function-by-function analysis and including a narrative discussion are stated above and also apply to Plaintiff's objection here.

### Analysis

The undersigned finds that the ALJ did explain how he determined that beginning on March 24, 2015, Plaintiff had functional limitations which limited her ability to sit and stand for an entire 8-hour workday. In Section five of his opinion, the ALJ discussed physical examinations from July and August 2006 which showed that Plaintiff had normal muscle strength, coordination, and a normal gait. R. at 24. The ALJ also discussed similar findings from a May 2007 and May 2008 exam. *Id.* The ALJ also noted that from May 2009 to November 2012, Plaintiff's neurologist, Gholam Motamedi, M.D., opined that Plaintiff also had a normal gait and strength and muscle tone. *Id.* Further, the ALJ discussed exams with Annette M. Hudler, D.O., and during these exams, the ALJ noted that her back was not tender to palpation, she had no muscle spasms, and her gait and stance were normal as well. *Id.* at 25.

13

In section six of the ALJ's opinion, the ALJ discussed Plaintiff's RFC beginning on March 24, 2015. The ALJ referred to Dr. Hudler's April 2015 opinion that Plaintiff had decreased range of motion in her right hip. *Id.* at 26. The ALJ discussed a September 2015 consultation where Plaintiff reported mid-back pain which radiated to her cervical region. *Id.* The ALJ then explained why he gave Seth Tuwiner, M.D.'s opinion some weight. *Id.* at 28. The ALJ stated that Dr. Tuwiner opined that Plaintiff could walk 6 to 8 hours per day but had no sitting limitations. *Id.* However, the ALJ found that Plaintiff's "degenerative disc disease and seizures . . . warrant greater sitting, walking, and environmental restrictions." *Id.* Considering the evidence discussed, the ALJ determined that beginning March 24, 2015, Plaintiff's RFC limited her to sitting, standing, or walking for a total of 6 hours in an 8-hour workday. Although the ALJ did not directly say why March 24, 2015 was the exact date for a change in Plaintiff's limitations, the undersigned finds that the ALJ discussed evidence prior to that date and evidence shortly after that date in support of his determination that Plaintiff's limitations had changed when she filed for SSI on March 24, 2015. Therefore, the undersigned recommends a finding that the ALJ explained how he determined that as of March 24, 2015, Plaintiff was no longer able to perform a full range of work at all exertional level but was limited to sitting, standing, and walking for a total of 6 hours in an 8-hour day.

### 3. September 2006 Neuropsychological Test and June 2005 MRI

Plaintiff argues that the ALJ failed to mention evidence from a September 15, 2006 neuropsychological test, which showed Plaintiff's difficulty staying on task, and a June 16, 2005 MRI which stated that a disc was touching Plaintiff's left sided nerve root. Pl.'s Br. at 9-10. Defendant argues that the ALJ considered Plaintiff's September 2006 neuropsychological test and that Plaintiff's reliance on evidence from the June 2005 MRI is misplaced. Def.'s Br. at 23-

14

24. The undersigned finds that the ALJ did not fail to address evidence from the September 15, 2006 neuropsychological test and that the ALJ's failure to mention that portion of the June 2005 MRI is insignificant.

### Applicable Law

"An ALJ is required to evaluate and weigh medical opinions based on several non-exhaustive factors: '(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.'" *Hayward v. Colvin*, No. 1:13CV597, 2014 WL 6705476, at *9 (E.D. Va. Nov. 26, 2014) (quoting *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)).

Where an ALJ fails to discuss or assign weight to a medical opinion, reversal is not warranted if it is clear that the opinion was considered by the ALJ. *Tanner v. Comm'r of Soc. Sec.*, 602 Fed. Appx. 95, 100-01 (4th Cir. 2015) (finding harmless error when ALJ failed to expressly assign weight to an opinion because RFC reflected the opinion's recommendations, the opinion was included in evidence the ALJ considered, and it was unlikely that a remand would change the Commissioner's finding); *see also Keaton v. Colvin*, No. 3:15cv588, 2017 WL 875477 at *4 (E.D. Va. Mar. 3, 2017) (finding that the record showed that the ALJ reviewed and considered doctors' opinions despite not assigning them weight).

### Analysis

Here, the undersigned finds that the ALJ evaluated the September 15, 2006 exam. On page 22 of the ALJ's opinion, the ALJ stated that Plaintiff's "scores on the Tests of Variables of Attention and the Wisconsin Card Sorting Test were suggestive of an attentional disorder" and cited Exhibit 8F, which is the September 15, 2006 exam. R. at 22. Further down in the ALJ's

opinion, the ALJ referenced the exam again and noted that Plaintiff scored "below average on the Cancellation of Rapidly Recurring Figures test and the WRAML Letter-Number Subtest." *Id.* Plaintiff argues that the ALJ failed to mention that the September 15, 2006 test suggested that Plaintiff had difficulty maintaining attention after 15 minutes on task and/or after 5 minutes of a high response task. However, simply because the ALJ did not reference this portion of the test results does not mean the ALJ failed to evaluate the exam. Not only did the ALJ discuss the September 15, 2006 exam findings, the ALJ also discussed more recent findings regarding Plaintiff's attention and then determined that Plaintiff had a moderate limitation in the area of concentration, persistence, or maintaining pace. *See.* R. at 22. Thus, the undersigned finds that Plaintiff's argument is unsupported.

Regarding Plaintiff's argument that the ALJ failed to include that Plaintiff's June 2005 MRI stated that "[d]isc material mildly deforms the thecal sac and is touching the left sided nerve root," Plaintiff fails to explain what this information means and how this information is relevant. As discussed above, the ALJ did explain how he determined Plaintiff's limitations with sitting and standing. Thus, the undersigned finds that the ALJ's failure to mention this detail about the June 2005 MRI is insignificant. For the foregoing reasons the undersigned recommends a finding that no remand is required based off the September 2006 exam and the June 2005 exam.

## V. RECOMMENDATION

**For the reasons set forth above, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Summary Judgment [Dkt. No. 10] be DENIED and Defendant's Motion for Summary Judgment [Dkt. No. 16] be GRANTED.**

## VI. NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

                                                                  /s/
                                              Ivan D. Davis
                                              United States Magistrate Judge

July 23, 2020
Alexandria, Virginia